IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ANTHONY HARO                                                                                        PLAINTIFF

V.                                          CASE NO. 5:25-CV-5105

RAY SHASTID and
DANIEL ESTERLINE                                                                                DEFENDANTS

## ORDER

Before the Court are Defendants Ray Shastid and Daniel Esterline's Motion for Judgment on the Pleadings (Doc. 24) and Brief in Support (Doc. 25).  Mr. Haro was required to respond to the Motion by January 5, 2026, which he did not do.  On January 21, 2026, Mr. Haro untimely filed his Response in Opposition (Doc. 26) without leave of the Court.  The Court will nonetheless consider Mr. Haro's Response for purposes of this Order.

Mr. Haro brought claims under 42 U.S.C. § 1983 alleging that his Fourth Amendment rights were violated when Defendants tested his urine after he voluntarily provided the urine but later withdrew his consent for testing.  Daniel Esterline was the police officer who collected the urine sample, and Ray Shastid was Chief of Police.  The urine was tested by Dr. Theodore Brown, who is no longer a party to this case because the Court dismissed Mr. Haro's claims against him with prejudice on December 19, 2025. (Doc. 22).[1]

The Court finds that Mr. Haro's claims are legally infirm for the same reasons that justified the dismissal of his claims against Dr. Brown—although Mr. Haro plausibly

---

[1] The relevant factual background is discussed more fully in the Court's prior order (Doc. 22).

1

...

alleges a Fourth Amendment violation, that right was not clearly established at the time of the incident.  *See* Doc. 22, pp. 3–8.  Mr. Haro's response asserts that the Court was incorrect to view the collection and testing of his urine as separate searches because the collection of his urine was not a search at all. By his reasoning, the Fourth Amendment was simply not implicated when he "consented to the *search* and the method to collect the urine sample," but it leaped back out of hiding when Mr. Haro revoked his consent by letter.  *See* Doc. 26, p. 2.  Mr. Haro does not explain how this theory affects the Court's qualified immunity analysis.

Mr. Haro's Response also cites new authority for the proposition that the right to withdraw consent at the collection stage was clearly established at the time of the search. He relies on *United States v. Dease*, a case in which the United States Court of Appeals for the Armed Forces held—relying, as this Court did, on *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602 (1989)—that an airmen's Fourth Amendment rights were violated when the Air Force tested his urine after he withdrew his consent and so the positive urinalysis results should have been excluded from trial.  71 M.J. 116 (C.A.A.F. 2012).  But this gets Mr. Haro no further.  As the Court noted in its prior order, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).

*Dease* thus offers little help to Mr. Haro for two reasons.  First, the United States Court of Appeals for the Armed Forces is an Article I court, and not an Article III court—it does not exercise Article III judicial power, its decisions are not binding on this Court (or any Article III court), and it cannot exercise its jurisdiction over non-servicemembers.  *See Ortiz v. United States*, 585 U.S. 427,  442 (2018) (discussing the scope of C.A.A.F's

judicial power). Although C.A.A.F. arguably exercises some kind of judicial power, it is unclear that its opinions can constitute judicial "precedent" in the qualified immunity context. Second, for whatever persuasive value *Dease* holds outside of the military system, one opinion alone does not "place the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 11. This Court's opinion certainly does not close the door on the debate. The same is true for *Dease*.

Further, and as Officer Esterline and Chief Shastid note, Mr. Haro's claims fare even worse against them than they did against Dr. Brown because neither had any personal role in the testing of Mr. Haro's urine—the only potential Fourth Amendment violation. *See S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (citing *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)) ("Government officials are personally liable only for their own misconduct."). Even if either individual had some attenuated role or duty in the testing of Mr. Haro's urine, however, Mr. Haro's claim still fails because, as a matter of law, the right was not clearly established at the time of the incident. *See* Doc. 22, pp. 6–7.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Judgment on the Pleadings (Doc. 24) is **GRANTED** and Mr. Haro's claims against Officer Esterline and Chief Shastid are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED** on this 23rd day of January, 2026.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE